# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2493 | **DATE** | 2/9/2004 |
| **CASE TITLE** | ROHR-GURNEE MOTORS INC vs. PATTERSON | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant's petition for attorneys' fees is granted. The parties shall comply with Local Rule 54.3(d). Defendant is given to May 10, 2004 to file a fee motion and supporting memoranda. Response is to be filed by May 24, 2004. Reply is due May 31, 2004. Court will rule by mail.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | FEB 0 9 2004 | |
| | Notified counsel by telephone. | date docketed | 40 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials |
| | Copy to judge/magistrate judge. | CLERK | 2/9/2004 |
| JS | courtroom deputy's initials | '04 FEB -9 PM 3:07 Date/time received in central Clerk's Office | date mailed notice JS mailing deputy initials |

FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Rohr-Gurnee Motors, Inc. d/b/a Gurnee )
Volkwsagen-Olds and Hyundai )
)
) No. 03 C 2493
Plaintiff, )
)
v. ) Judge Holderman
)
Tiffany Patterson, )
)
Defendant. )

DOCKETED
FEB 0 9 2004

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Before this court is defendant Tiffany Patterson's ("Patterson") motion, filed on October 23, 2003, requesting that her attorney's fees be paid by plaintiff Rohr-Gurnee Motonrs, Inc. d/b/a Gurne Volkwsage-Olds and Hyundai ("Rohr-Gurnee") pursuant to 15 U.S.C. § 1117(a) of the Lanham Act. For the following reasons, this court rules that Patterson is entitled to recover reasonable fees that she paid her attorney for defending this lawsuit after this court's ruling at the June 18, 2003 hearing ("June 18 Hearing"), which denied Rohr-Gurnee's request for a preliminary injunction against Patterson.

## BACKGROUND

On December 31, 2001, Patterson, a web developer by trade, bought a car from Rohr-Gurnee that according to her testimony quickly developed a number of mechanical problems. In June of 2001, after becoming dissatisfied with Rohr-Gurnee's response to the car's problems, Patterson registered the domain names "gurneevolkswagen.com" and "gurneevolkswagon.com." (June 18 Hrg.

1



Tr. at 48-49.)[1] The website indicated that it was in no way affiliated with Volkswagen Corporation or defendant Rohr-Gurnee and provided a link to Rohr-Gurnee's website for consumers who were looking for that website but reached Patterson's in error. (Id. at 32.) The website also stated that "Tiffany Patterson is exercising the First Amendment of the United States of America, which is freedom of speech and self-expression." (Id. at 36.) Patterson testified that she was using the website to detail her experience with Rohr-Gurnee and not to persuade a consumer's decision regarding purchasing a car. (Id. at 37.) She testified that she desired to post on the Internet her experience with Rohr-Gurnee because she wanted people to know her version of what occurred, in part, so that others could learn from her experience. (Id. at 51.)

On April 4, 2003, Rohr-Gurnee filed a one-count complaint against Patterson alleging violations of 15 U.S.C. 1125(d) of the Lanham Act, also known as the Anticybersquatting Consumer Protection Act ("ACPA"), in that Patterson by registering the domain names "gurneevolkswagen.com" and "gurneevolkswagon.com" had a bad faith intent to profit from or transmit derogatory information about Rohr-Gurnee's allegedly protected trademark: "Gurnee Volkswagen." On June 18, 2003, this court, after an evidentiary hearing, denied Rohr-Gurnee's request for a preliminary injunction against Patterson based on the finding that Rohr-Gurnee did not have a better than negligible chance of success on the merits of its claim. Nearly four months later, on October 9, 2003, this court granted Rohr-Gurnee's motion to dismiss its complaint with prejudice.

## ANALYSIS

I. <u>Local Rule 54.3</u>

---

[1] Citations to the June 18 Hearing Transcript are to an excerpt of the preliminary injunction proceedings that contains Tiffany Patterson's full testimony along with the attorneys' closings and the court's ruling.

2

As a preliminary matter, Rohr-Gurnee argues that Patterson has failed to comply with Local Rule 54.3. This court agrees with Patterson that Local Rule 54.3 does not apply to a motion such as this one that only requests a ruling on the issue of entitlement to attorney's fees. The purpose of Local Rule 54.3 is to facilitate an agreement between the parties as to the proper amount of attorney's fees. Local Rule 54.3 should be complied with when there is no dispute about whether a party is entitled to attorney's fees, and after a court rules that a party is entitled to attorney's fees.

## II. Attorney's Fees under the Lanham Act

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. 1117(a). In <u>Door Systems, Inc. V Pro-Line Systems, Inc.</u>, 126 F.3d 1028, 1031(7th Cir. 1997), the Seventh Circuit analyzed the standard for awarding attorney's fees under the Lanham Act when the plaintiff is being asked to pay the defendant's fees. The Seventh Circuit rejected the ruling by the district court that a non-prevailing plaintiff would only be liable for attorney's fees when the suit was brought in bad faith. <u>Id.</u> ("[B]ad faith is not the correct standard for determining whether to award attorney's fees to the defendant in a Lanham Act case."), and also explained that whether or not a uniform standard for awarding attorney's fees is applied to both non-prevailing plaintiffs and non-prevailing defendants "plaintiffs and defendants are differently circumstanced and so a uniform standard may not have a uniform impact; the 'special circumstances' that warrant an award to a plaintiff may not be the same as those that warrant an award to a defendant." <u>Id.</u>

Accordingly, a standard of "deliberateness," which is used to determine whether a defendant who had been adjudicated an infringer should pay attorney's fees, would be ineffective in designating a case as "exceptional" where it is the plaintiff that is being asked to pay. The filing of a lawsuit is

3

always a deliberate act. Id. Thus, the Seventh Circuit rejected both bad faith and deliberateness as bases for awarding attorney's fees to a defendant, and concluded that "between good faith as a safe harbor and deliberateness as an automatic basis for awarding fees is the category of oppressive suits, fairly described as exceptional, in which the case for an award of fees to the defendant is compelling." Id. at 1032. The Seventh Circuit explained that an oppressive suit was "something that might be described not just as a losing suit but as a suit that had the elements of abuse of process, whether or not it had all the elements of the tort," Id. at 1031, and that a "suit can be oppressive because of lack of merit and cost of defending." Id. at 1032.

A.  Attorney's Letter

In support of the argument that Rohr-Gurnee's suit was "oppressive," Patterson first argues that Rohr-Gurnee's intent in bringing the suit was not to assert legitimate legal rights, but to coerce Patterson into giving up the registered domain names. As evidence of this intent, Patterson points to a letter dated August 20, 2002 written by one of Rohr-Gurnee's counsel, and disclosed to Patterson during discovery, that recommends an action by Rohr-Gurnee against Patterson, in part, because "unless Ms. Patterson is a woman of significant means, she may just give up the addresses without a fight or at the very least, will be beaten into submission by the cost of defending the litigation." (Def.'s Pet. for Att'y Fees, Ex. A at 2.)

If this suit were brought for the purpose of "beating Patterson into submission," it would certainly have an element of abuse of process justifying attorney's fees under the standard of Door Systems Inc.. Evans v. West, 935 F.2d 922, 923 (7th Cir. 1991) ("Under Illinois law, a plaintiff pleading abuse of process must establish the existence of both 'an ulterior purpose or motive for the use of regular court process,' and an 'act in the use of process not proper in the regular prosecution

4

of a suit.'") (citing cases); See also 1 Am. Jur. 2d Abuse of Process § 5 (2003) (explaining that an element "generally recognized as constituting the basis of the tort of abuse of process" is "an ulterior motive or purpose on the part of the person causing the process to issue"). Rohr-Gurnee argues that the letter Patterson cites to is privileged, presumably within the attorney-client privilege. (Pl.'s Resp. to Def.'s Pet. for Att'y fees at 3.) Patterson argues that any privilege with regard to the letter was waived because it has no markings indicating it is privileged and it was produced in response to a legitimate discovery request. (Def.'s Reply at 2.)

Neither party directs the court to any authority whatsoever on this issue that has divided the courts. See Mueller and Kirkpatrick, Evidence (2d ed.1999) ("Courts are divided on whether the attorney-client privilege is lost by accidental or inadvertent disclosure."). However, "[t]he party seeking to invoke the privilege bears the burden of proving all of its essential elements." U.S. v. Evans, 113 F.3d 1457, 1461 (7th Cir. 1997). Thus, Rohr-Gurnee bears the burden of proving that it has not waived the attorney-client privilege. Id. (explaining that an element of the attorney-client privilege is that "the protection may be waived.") Without clear guidance from either party, this court is unwilling to state that the August 20, 2002 letter by Rohr-Gurnee's counsel submitted by Patterson should not be considered by this court because it is privileged.

B.   Rohr-Gurnee's Likelihood of Success under the ACPA

Even without considering the disputed letter, however, this court finds that after the June 18 Hearing, Rohr-Gurnee's continued pursuit of this case became "oppressive," because at that hearing this court ruled, and Rohr-Gurnee became aware, that it did not have a better than negligible chance of success on the merits of its claim. The ACPA states in pertinent part:

(1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal

5

name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person

> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
> (ii) registers, traffics in, or uses a domain name that –
>
>> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>>
>> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
>>
>> (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36

15 U.S.C. § 1125(d). Thus, to establish Patterson's liability under the ACPA, Rohr-Gurnee had the burden of showing that Patterson, (1) with a bad faith intent to profit from a protected mark, (2) registered or otherwise used a domain name, that is (3) identical or confusingly similar to a protected mark owned by Rohr-Gurnee. This court based its June 18 ruling that Rohr-Gurnee did not have a better than negligible chance of success on the merits on the findings that the mark "Gurnee Volkswagen" was not entitled to protection under the ACPA, and that Patterson did not possess the "bad faith" required for a finding of liability under the ACPA.

With respect to the requirement of a protected mark, Rohr-Gurnee argued that "Gurnee Volkswagen" was a distinctive mark entitled to protection under section 1125(d)(1)(A)(ii)(I). As the Supreme Court has made clear, there are five categories of distinctiveness in the following ascending order: generic, descriptive, suggestive, arbitrary and fanciful. Two Pesos Inc. v. Taco Cabana Inc., 505 U.S. 763, 768 (1992). A generic mark is never entitled to trademark protection under the Lanham Act. Id. A descriptive mark is only entitled to protection if it has acquired

secondary meaning. Id. at 769.

This court ruled that the mark at issue, "Gurnee Volkswagen," was not a mark entitled to protection because it was merely a descriptive mark that had not acquired secondary meaning. First, it was undisputed that Rohr-Gurnee had no ownership in the mark "Gurnee," which is a municipality in Illinois, and that Volkswagen Corporation, not Rohr-Gurnee, owned the trademark rights in the trademark "Volkswagen." (June 18 Hrg. Tr. at 89.) Volkswagen Corporation, the mark's owner, chose not to participate in Rohr-Gurnee's lawsuit. As this court explained at the June 18 Hearing, the name "Gurnee Volkswagen" is at best a descriptive mark. (Id.) It describes the brand of automobile and location where the product can be obtained.[2] See Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc., 149 F.3d 722, 727 (7th Cir. 1998) ("A descriptive mark is one that 'describes the ingredients, qualities, or characteristics of an article of trade or a service.'") (citation omitted). Therefore, Rohr-Gurnee was required to show that its "Gurnee Volkswagen" mark had acquired secondary meaning.

The existence of secondary meaning turns on the issue of "how does the public regard the mark in question?" Gimix, Inc. v. JS & A Group, Inc., 699 F.2d 901, 907 (7th Cir. 1983). The only direct evidence on this point would be consumer surveys. Rohr-Gurnee presented none at the June 18 Hearing. Therefore, this court looked to the evidence Rohr-Gurnee did present which was its advertising efforts to determine whether secondary meaning had been acquired. (June 18 Hrg. Tr. at 122.) These advertising efforts were not sufficient to establish secondary meaning. Rohr-Gurnee

---

[2] At the time of the June 18 Hearing the Village of Gurnee was not the location of Rohr-Gurnee's dealership. The dealership was located in Park City, Illinois. Plaintiff asserted, however, that Gurnee was used in its name because plaintiff intended the Village of Gurnee to be its future location.

could only point to inconsistent advertising over a five-year period beginning in 1998 to establish secondary meaning. (Id.) Over that period the term "Gurnee Volkswagen" was used along with the trade name "Bob Rohrman," and at times "Gurnee Volkswagen" was used alone. (Id. at 122.) In Gimix, Inc., the Seventh Circuit held that similar inconsistent advertising of an alleged protected trademark for five years did not establish secondary meaning. Id. In Gimix, Inc., the Seventh Circuit commented that a five-year advertising period was "so brief as to cast serious doubt upon the very possibility of having established a strong secondary meaning."Id.

Accordingly, this court ruled that as of the June 18 Hearing, Rohr-Gurnee did not have a better than negligible chance of success on the merits of its claim because it had not shown that "Gurnee Volkswagen" was protected under the Lanham Act.

This court also ruled that even if Rohr-Gurnee could show that its mark was protected, its claim under the ACPA would still fail because Patterson reasonably believed that her use of the domain names was a fair use or otherwise lawful. (June 18 Hrg. Tr. at 124.) In addition to registering a protected mark as a domain name, for liability the ACPA requires "a bad faith intent to profit from that mark." 15 U.S.C. § 1125(d)(1)(A)(i). The ACPA lists a number of factors for a court to consider in determining whether a person has the requisite "bad faith." 15 U.S.C. § 1125(d)(1)(B)(i). The ACPA also delineates a set of circumstances that precludes a finding of bad faith:

> (ii) Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.

15 U.S.C. § 1125(d)(1)(B)(ii). After watching Patterson testify and considering her testimony, this court found that Patterson reasonably believed that her use of the domain names was a fair use or

otherwise lawful use. Patterson did not try to profit from the domain names in any way and never used the website in attempt to extort Rohr-Gurnee. (June 18 Hrg. Tr. at 125.) There was no showing that any of the statements on her website were untruthful, she made clear that she was only presenting the voice of a consumer and also presented a link to Rohr-Gurnee's website for anyone who erroneously found her website while looking for Rohr-Gurnee's. (Id.) Accordingly, this court ruled that Patterson's reasonable belief that her use of the domain names was a fair use or otherwise lawful provided an additional basis for the ruling that Rohr-Gurnee did not have a better than negligible chance of success on the merits of its claim.

After the June 18, 2003, hearing, Rohr-Gurnee's continued pursuit of this lawsuit for the next four months was oppressive because it was clear on June 18, 2003 that Rohr-Gurnee's case lacked merit. Contrary to Rohr-Gurnee's assertion in response to Patterson's request for recovery of her reasonably attorney fees, this case was not dismissed "promptly" (Pl.'s Resp. to Def.'s Pet. for Att'y Fees at ¶ 23) after Rohr-Gurnee had time to review the court's ruling at the June 18 Hearing. Rohr-Gurnee continued to prosecute the case against Patterson. After the June 18 Hearing, and before moving to dismiss the case, Rohr-Gurnee: filed a First Amended Complaint against Patterson (Dkt. No. 29); filed a court-ordered report of planning meeting to further schedule for pretrial proceedings in the case (Dkt. No. 24); added new counsel to pursue the case against Patterson (Dkt. No. 30); required Patterson to move to compel discovery (Dkt. No. 31).

## CONCLUSION

Accordingly, Patterson is awarded attorney's fees incurred in defending Rohr-Gurnee's lawsuit after June 18, 2003. For the purpose of quantifying the award of fees and expenses, the parties' attention is directed to Local Rule 54.3(d). The parties shall follow the procedures of rule

9

54.3(d). The date of "judgment or settlement agreement" referred to in that rule that triggers the parties' respective obligations is the date this order is entered. If no agreement is reached, the fee motion and joint statement called for in 54.3(e) shall be filed no later than May 10, 2004. Any response is to be filed by May 24, 2004, and any reply shall be filed by May 31, 2004.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: February 9, 2004